616 A.2d 737

**BETHLEHEM AREA SCHOOL DISTRICT, Petitioner,**

**v.**

**Donald M. CARROLL, Jr., Secretary of Education, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 5, 1992.

Decided Oct. 21, 1992.

194

Andrew E. Faust, for petitioner.

Jeffrey F. Champagne, Chief Counsel, for respondent.

Before CRAIG, President Judge, McGINLEY, (P.), and KELLEY, JJ.

McGINLEY, Judge.

■ The Bethlehem Area School District (District) petitions for review of an order of the Secretary of Education (Secretary) that affirmed a determination of the Bureau of Special Education (Bureau) disapproving certain expense items claimed by the District for reimbursement from the state in its special education plan and budget for the school year 1990–1991. The District, based on its interpretation of regulations of the State Board of Education (State Board) and standards of the Department of Education (Department), contends that personnel costs for occupational therapy (OT), physical therapy (PT) and psychiatric services (collectively, the related services) are properly reimbursable by the state under Section 2509 of the Public School Code of 1949 (School Code),[1] relating to payments on account of courses for exceptional children.

The Colonial Northampton Intermediate Unit No. 20 (IU), which serves this District and others, submitted a special education plan and budget, which included the District's plan and budget, to the Bureau, in accordance with Section 1372(2) of the School Code, 24 P.S. § 13–1372(2). The Bureau reviewed the plan and budget and disapproved some items, including the District's claims for the related services. The District sought a hearing, but the parties then agreed that the threshold question of whether these costs are reimbursable at all (as distinct from the question of approval of the actual

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 25–2509. The School Code was extensively amended by the Act of August 5, 1991, P.L. 219 (Act 25). Act 25 added subsection designations to Section 2509 and rewrote the first paragraph. The rewritten first paragraph, unlike many of the amendatory provisions, applies retroactively to the school year 1990–1991, and it retains the previous formula for calculating reimbursements. For the school year 1991–1992, Act 25 provides an entirely different approach to calculating special education payments to school districts in Sections 2509.5, 2509.6 and 2509.7 of the School Code, added by Act 25, 24 P.S. §§ 25–2509.5, 25–2509.6 and 25–2509.7.

dollar amounts claimed) is purely legal. They submitted briefs, which were transmitted to the Secretary for an adjudication on the Bureau's motion for summary judgment.

The Secretary's opinion rests primarily upon the language of Section 2509. He concluded that the legislature chose to be detailed and specific when it enacted Section 2509 and plainly listed specific persons whose salaries and retirement fund payments are reimbursable; conversely, the Secretary reasoned that omission means exclusion. Further, the Secretary found that references in this section to "assistants" do not encompass the actual providers of the related services. He noted that public school funding comes from a variety of sources, and the fact that a district is required to provide a particular service does not necessarily mean that personnel costs associated with it are reimbursable by the state under Section 2509. The Secretary affirmed the disallowance and the District has petitioned for review. The scope of our review of an order of the Secretary is to determine whether constitutional rights were violated or an error of law committed and whether the necessary findings of fact are supported by substantial evidence in the record. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Pittsburgh Board of Education v. Department of Education*, 135 Pa.Commonwealth Ct. 56, 581 A.2d 681 (1990), *petition for allowance of appeal denied*, 527 Pa. 657, 593 A.2d 427 (1991).

Section 2509(a) of the School Code provides generally that every school district or joint board of school directors "planning to conduct classes or schools for the exceptional" shall submit an estimate of the costs of those classes or schools as well as an estimate of costs of transportation of pupils to such schools for prior review and approval, in order to establish the amount on which the reimbursement for courses for exceptional children will be paid. The Commonwealth will pay to each school district an amount to be calculated by subtracting the "instruction cost per elementary [or high school] pupil," as defined in Section 2561 of the School Code, 24 P.S. § 25–2561, relating to tuition charges for pupils of other districts, from the product of the average daily membership in special edu-

cation classes times the "instruction cost per special class pupil" as thereafter defined. Section 2509(b) provides in pertinent part:

(b) To find the 'instruction cost per special class pupil,' add (1) salaries of directors and supervisors of special education, public school psychologists, principals of special schools and assistants, teachers of approved special classes for exceptional children, clerks and assistants employed in the district's program for special education, (2) the district's contribution to the retirement fund on behalf of directors and supervisors of special education, public school psychologists, principals of special schools and assistants, teachers of approved special classes for exceptional children, clerks and assistants employed in the district's program for special education, [the costs of certain supplies and telephonic equipment, and divide the portion of the total approved by the Department] by the average daily membership in the district's approved special classes for exceptional children.

The District contends that regulations of the State Board in 22 Pa.Code Chapter 14 (regulations) and the standards of the Department in 22 Pa.Code Chapter 342 (standards) require that it provide the related services and that the state reimburse the District.[2] It cites the following regulations in particular.

Section 14.2 of the State Board regulations, "Purpose," provides in part:

**2.** The District notes that in 1989 the legislature expressly directed the State Board to adopt revised regulations of its own and to approve revised standards of the Department for the education and training of exceptional children, pursuant to an expedited procedure, to be effective beginning with the school and fiscal year 1990–1991. The new regulations and standards "shall, at a minimum, provide measures as may be necessary to assure financial accountability, prudent management, appropriate educational support services and special classes to meet the needs of pupils." Section 1372(1.1)(i) of the School Code, 24 P.S. § 13–1372(1.1)(i), added by Section 5 of the Act of July 8, 1989, P.L. 253. The State Board and the Department promulgated new 22 Pa.Code Chapters 14 and 342, replacing Chapters 13 and 341, which were reserved. The new regulations and standards provide a comprehensive scheme governing every facet of special education programming.

(d) To provide services and programs efficiently, the Commonwealth will delegate operational responsibility to its school districts. Each school district shall, by direct service or through arrangement with other agencies, provide the following:

. . . .

(4) A free appropriate public program of education for each exceptional student which is based on the unique needs of the student, not solely on the classification of the student.

An "[a]ppropriate program" is defined in 22 Pa.Code § 14.1 as "[s]pecial education and related services or early intervention" that are individualized, provided by an agency under the authority of a school entity, at no cost to parents, in conformity with an Individualized Education Program (IEP) and applicable federal requirements and reasonably calculated to yield meaningful benefit. "Related services" are defined in the same section as:

Transportation and developmental, corrective and other appropriate services as required under § 14.33 (relating to related services) to assist an exceptional student to benefit from special education. Examples include the following:

(i) Speech pathology and audiology.

(ii) Psychological services.

(iii) Physical and occupational therapy.

(iv) Social work services.

(v) School health services.

(vi) Early identification and assessment.

(vii) Medical services for diagnosis or evaluation.

(viii) Parent counseling and education.

(ix) Recreation.

(x) Counseling services.

Section 14.33, "Related services," further provides:

(a) The IEP team, during the development, review or revision of an IEP, shall determine whether the exceptional student needs one or more related services.

(b) The IEP team shall conclude that transportation to and from school or to and from an extracurricular activity, or a developmental, corrective or supportive service needed by an exceptional student during school hours, is a related service, if it determines that one of the following criteria has been met:

(1) The service in question is an integral part of an educational objective of the student's IEP.

(2) The service is needed to assist the student to benefit from or gain access to a special education program.

The State Board regulation relating to IEP, 22 Pa.Code § 14.32, provides in part:

(f) The IEP of each exceptional student shall conform to the following:

. . . .

(3) A statement of the specific special education services to be provided to the student, including if appropriate the following:

(i) Assistive technology.

(ii) Vocational education.

(iii) Extended school year programs.

(iv) Adaptive physical education.

(v) Behavior management programs.

(vi) Transition services.

(vii) Enrichment and advancement.

In addition, Section 342.1(b), in defining "Autism/pervasive developmental disorder," specifies that determination of that condition shall include "a full assessment by a physician qualified to render a diagnosis and by a public school psychologist specifying the nature and degree of the disorder."

Section 342.6, relating to education plans, requires in subsection (a) that special education services and programs be administered in accordance with the plan for special education in Section 1372(2) of the School Code and 22 Pa.Code Chapter 342. Section 1372(2) requires each *intermediate unit,* cooperatively with other intermediate units and with school districts,

to prepare and submit plans for the proper education and training of all exceptional children in accordance with the standards and regulations of the State Board. Section 342.-6(c)(1) requires each *school district* to develop and submit a special education plan and budget that specifies the special education services and programs which shall be district-operated and also designates those services which shall be required from the intermediate unit or from a consortium of school districts. Section 342.6(c)(2) requires each *intermediate unit* to submit a special education plan and budget specifying the special education services and programs to be operated by the intermediate unit, by a consortium of school districts and by other agencies. Special education plans and budgets are to be approved by the Department if they meet the criteria of providing a full range and variety of services and programs and are adequate to meet the needs of exceptional children within the intermediate unit under the specifications of Chapters 14 and 342. 22 Pa.Code § 342.6(e).

Finally, Section 342.8, relating to general supervision by the Department, provides for fiscal accountability in subsection (d), including subparagraph (2) "Allowable personnel costs":

Special education services and programs shall be provided by personnel under the following provisions:

(i) The number of certified teachers of exceptional students and the number of related services personnel shall be determined under approved intermediate unit and school district special education plans.

(ii) The number of other certified personnel shall be determined as deemed appropriate by the employing agency, but the number of personnel supported by State and Federal special education funds may not exceed the following [specified numerical quotas for support teachers, instructional supervisors, school psychologists and school social workers or similar certified personnel.]

(iii) Paraprofessional personnel shall be assigned as provided for under the following sections of the [School Code]:

(A) Paraprofessional staff persons used in supportive and supplemental intervention as provided for in § 342.42

[relating to educational placement] shall be provided as allowed under section 1373.1 of the [School Code].[3]

(B) Paraprofessional staff persons used in part-time and full-time intervention as provided for in § 342.42 shall be provided as allowed under section 2509 of the [School Code].

The District asserts that the above regulations require that districts make available OT, PT and psychiatric services, where needed, under their "operational responsibility" to provide special education programs and related services. 22 Pa.Code § 14.2(d). It notes that it must provide these services directly unless it is not "feasible" for the District to do so, in which case the District must secure proper education and training elsewhere, under Section 1372(3) of the School Code, 24 P.S. § 13–1372(3), relating to special classes or schools established and maintained by school districts. Because the District must provide the related services where needed, it believes that personnel costs for those services are allowable personnel costs under Section 342.8(d)(2)(i), noted above, which provides that the number of certified teachers and the number of related services personnel shall be determined under the approved intermediate unit and school district special education plans.

The District notes that the Secretary's opinion in this matter cites to none of the regulations or standards, and it contends that the Secretary ignored them in reaching his conclusion that the related services personnel costs are not reimbursable under Section 2509 of the School Code. The District argues that the Secretary violated the principle articulated in *SmithKline Beckman Corp. v. Commonwealth*, 85 Pa.Commonwealth Ct. 437, 482 A.2d 1344 (1984), *aff'd per curiam*, 508 Pa. 359, 498 A.2d 374 (1985), and other cases that an administrative agency is no more free to ignore its own regulations than are those sought to be regulated, and that the agency's interpretation of its enabling statute through "legisla-

3. Relating to readers, helpers, guides, aids appliances, etc., reimbursement. Repealed by Act 25.

tive" regulations must be upheld unless the regulations are clearly inconsistent with the statute.[4]

The District notes that the Secretary conceded that Section 2509 of the School Code is subject to more than one "plausible reading" and argues that, based on the standard tools of construction, its interpretation of what the regulations and standards require is not clearly inconsistent with the act. The District maintains that the legislature could not have contemplated in 1953, when the language at issue was adopted, the proliferation of services that are now part of educating exceptional children, and could not reasonably be expected to specifically list such providers. It argues that in the phrase "directors and supervisors of special education, public school psychologists, principals of special schools and assistants, teachers of approved special classes for exceptional children, clerks and assistants employed in the district's program for special education," the second use of the word "assistants" should be construed to refer to auxiliary and support personnel who "assist" an exceptional student to benefit from special education (*see* definition of "related services" noted above) rather than to those who work "under the supervision of the person being assisted," as the Secretary interprets that term.

Further, the District asserts that the Secretary's interpretation leads to the absurd result that the State will reimburse expenses for "assistants to clerks" but not for providers of fundamental program services, contrary to the presumption that the legislature did not intend a result that is absurd, impossible of execution or unreasonable. 1 Pa.C.S. § 1922(1). The District also finds absurd the result that a school district cannot plan and budget for the disputed related services under Section 2509, but an intermediate unit can under Section

---

4. *See also Pennsylvania Human Relations Commission v. Uniontown Area School District,* 455 Pa. 52, 313 A.2d 156 (1973) (distinguishing between an agency's adoption of "legislative" regulations pursuant to a grant of power from the legislature to make policy in a particular area, where a reviewing court may not inquire into the wisdom of a chosen policy that is within the grant of power, versus the adoption of regulations that are merely "interpretive" of a statute, where the court should grant deference to the agency's interpretation but ultimately must apply its own interpretation to determine validity).

2509.1, 24 P.S. § 25–2509.1. The Secretary concluded that Section 2509.1, which formerly provided for reimbursement to the intermediate unit for "the cost of operating and administering classes and schools for exceptional and institutionalized children," was far more general and inclusive than Section 2509(b) and reflects that it is for the legislature to choose to be more or less specific, within constitutional limits.

We find the issue to be hard and close, and the District's arguments are often forceful, but we must agree with the Secretary on the points that are determinative. Most importantly, we agree that the principle that an agency may not contravene its own regulations, *SmithKline*, is not applicable here, because the regulations and standards, although requiring school districts to provide related services as needed, do not purport to specify costs that are reimbursable to districts under Section 2509(b).

■ Central to the District's argument is its interpretation of the Department standard at 22 Pa.Code § 342.8(d)(2)(i), noted above. Although that standard provides that the number of both "teachers of exceptional students" and "related services personnel" are to be determined under both approved "intermediate unit" and "school district" plans, we agree with the Secretary that this provision, of its own force, does not have the effect of incorporating all possible related services personnel into the list of those whose salaries and retirement fund payments are listed under Section 2509(b). The regulation does not state that all related services personnel that a school district chooses to use to provide mandated services represent reimbursable expenses. Because a district's plan and budget is included in an intermediate unit's plan and budget that is submitted to the Bureau (*see* 22 Pa.Code § 342.6(a) and Section 1372(2) of the School Code), the standard at 22 Pa.Code § 342.8(d)(2)(i) necessarily covers personnel costs that might appear in either. In addition, the Secretary notes that "public school psychologists" are on the list provided in Section 2509(b), but "psychological services" are on the illustrative list provided in the definition of "related services" in 22 Pa.Code § 14.1. Thus the reference in Section

342.8(d)(2)(i) to "related services personnel" preserves harmony between Section 2509(b) and Section 14.1, without making expenses for all "related services personnel" reimbursable.

The District's interpretation of the regulations and standards is based on an underlying assumption that if the state mandates that the District provide certain services, then the statutes and regulations must provide state funding. This is not necessarily true. By way of analogy, the state mandates that each school district provide a free public education for non-exceptional students, which must conform to strict guidelines. The state provides assistance to districts to carry out that duty, but it does not provide full funding.

■ As noted at the outset, the Secretary relied upon the maxim of construction *expressio unius est exclusio alterius* to conclude in his opinion that the detailed listing in Section 2509(b) of certain persons whose salaries and retirement fund payments are listed also excludes by omission any other persons. We agree. The disputed language is rendered somewhat ambiguous by the inclusion of the term "assistants"; nevertheless, the subsection does provide a detailed list of positions as opposed to a generic description. As the Secretary observes, we have held that this court lacks authority to add to such a list, even when an omission appears likely to represent an oversight. *Latella v. Unemployment Compensation Board of Review*, 74 Pa.Commonwealth Ct. 14, 459 A.2d 464 (1983) (where statute authorizing reduction of benefits mentioned only columns "A" through "D" on the relevant benefit table, the court refused to assume that the legislature intended also to include column "E").

■ As for the meaning of "assistant," we agree with the Secretary's interpretation of the term in his opinion as meaning "one who assists another in the completion of a task, and who works under the supervision of the person being assisted." Secretary's Opinion at 6. The Secretary correctly notes that the District's sweeping interpretation—those who give aid or support to exceptional children to benefit from special education—encompasses all persons who in any way provide

assistance and renders the references to specific positions mere surplusage. It also conflicts with other provisions: readers, helpers and guides were covered separately by former Section 1373.1 of the School Code, before Act 25 (at a lower level of reimbursement), and transportation costs are still covered separately by Section 2541, 24 P.S. § 25–2541.

■ Further, we note that the phrase "employed in the district's program for special education" modifies *all* of the positions listed. Because the purpose of the listing is to identify "salaries" and "the district's contribution to the retirement fund," we conclude that the term *"employed "* is used in the sense of "engaged for hire" rather than the broader sense of "used."[5] This interpretation is not determinative as to a person hired by a district to provide a related service such as OT or PT, but it does exclude consideration of payments to independent professional contractors.

The District disagrees with any interpretation of Section 2509 that provides for reimbursement of payments to "assistants to clerks" while excluding reimbursement for professionals providing important *related services.* That they are related services is the key. There is a distinction between "special education programs" and "related services" that is maintained throughout the School Code and the regulations and standards. *See, e.g.,* 22 Pa.Code § 14.32, relating to IEP, which requires an IEP to contain a "statement of the specific *special education services and programs* and *related services* to be provided to the student...." 22 Pa.Code § 14.32(f)(3) (emphasis added). The heading of Section 2509 states that the Section concerns "[p]ayments on account of *courses* for exceptional children." (Emphasis added.) The headings of titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control, but they may be used to aid in construction. 1 Pa.C.S. § 1924. Words and phrases are to be construed according to their common and approved usage unless they have acquired a peculiar and

---

**5.** The dictionary defines "employ" as 1 a "to make use of" and 1 c "to use or engage the services of." Webster's Third New International Dictionary 743 (1986).

appropriate meaning. 1 Pa.C.S. § 1903(a). Common usage does not ordinarily associate provision of related services such as OT, PT, speech pathology and social work services with the term "courses."

In addition, the object of the calculation set forth in Section 2509(b) is to determine the "*instruction* cost per special class pupil." (Emphasis added.) From that figure is to be subtracted the "instruction cost per elementary [or high school] pupil" as defined in Section 2561 of the School Code to determine the reimbursement. The "instruction cost per elementary pupil" is determined as follows:

> Add the salaries of supervisors, principals, clerks, assistants and teachers employed in the receiving district's elementary schools, the district's contribution to the retirement fund and social security contribution fund on behalf of teachers, supervisors and principals employed in the district's elementary schools [along with the costs of certain supplies and divide by the average daily membership in the schools in the preceding year.]

Section 2561(2), 24 P.S. § 25–2561(2). Section 2561 also defines an "overhead cost per pupil," based upon:

> salaries of secretaries, treasurers, auditors, superintendents, the cost of library books, the salaries of librarians, lectures, health, medical, nurse and dental services, the ᵛwages of janitors, and other comparable employes, the cost of fuel, water, light and power, telephone rentals and tolls, the cost of maintenance of the school plant, ... the cost of care of school grounds, premiums on fire and workmen's compensation insurance, the cost of attendance at teachers' institutes, and the district's contribution to the retirement fund on behalf of the above listed employes....

The "overhead cost per pupil" takes into account all aspects of the operation of a school not directly related to "instruction."

The "instruction cost" and the "overhead cost" are added to determine the "tuition charge" that a district must pay if it sends a student to a school in another district. Section 2561(2), (3) and (4). A district must pay this same "tuition charge" to the Commonwealth if it sends a student to a special

class or school operated by an intermediate unit, Section 2509.1(f). In either case the district pays all of the ordinary costs of overhead and "instruction" for educating nonexceptional students. In this context, the legislature intended, by drafting Section 2509 as it did, to have the Bureau approve reimbursement to the districts only for the excess costs for "instruction" of an exceptional student, at the same time excluding reimbursement of the costs of related services.

Although the parties have not cited Section 1373 of the School Code, 24 P.S. § 13–1373, that section also addresses state reimbursement and is consistent with the Secretary's interpretation:

> School districts maintaining special classes in the public schools or providing special education, as specified in this subdivision of this article, shall receive reimbursement, as provided by this act, so long as such classes, such schools, and such special education are approved by the Department [of Education] as to location, constitution, and size of classes, conditions of admission and discharge of pupils, equipment, courses of study, methods of instruction and qualification of teachers.

Here again the focus is on "classes," "courses" and "instruction" rather than on the types of "related services" specified in the definition of that term in 22 Pa.Code § 14.1. The definition states that such services "assist an exceptional student to benefit from special education." It does not state that such services constitute "special education."

Correlatively, it is not unreasonable to permit an intermediate unit to be reimbursed for both the excess costs of special education programs and any related services performed by the intermediate unit while not approving reimbursement for related services performed by a school district. As the Secretary notes, and as this court observed in *Philadelphia County Intermediate Unit No. 26 v. Department of Education*, 60 Pa.Commonwealth Ct. 546, 550, 432 A.2d 1121, 1124 (1981), intermediate units, unlike local school districts, have no taxing power; they therefore must be funded by the state. The court noted that generally member school districts

devise individual plans to accommodate their own exceptional children.   The intermediate unit discusses these plans with the districts and then establishes special programs for those exceptional children—usually ones with the more severe handicaps—for whom the local districts cannot efficiently and effectively provide.   *Id.* at 549 n. 4, 432 A.2d at 1124 n. 4. Therefore, the intermediate unit must request reimbursement for related services in the plan and budget that it submits to the Bureau.

For all of the above reasons, we conclude that the Secretary of Education did not err in determining that the related services expenses claimed by the District in its special education plan and budget for the school year 1990–1991 are not subject to reimbursement under Section 2509 of the School Code.   We affirm.

## ORDER

AND NOW, this 21st day of October, 1992, the order of the Secretary of Education at Docket No. 91–3, dated April 26, 1991, is affirmed.