IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of City of Philadelphia   :
  :
From The Decision of the Board of   : No. 1085 C.D. 2016
License and Inspection Review   : Submitted: February 24, 2017
  :
Appeal of: Nikolaos Tsiakanikas   :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
  HONORABLE MICHAEL H. WOJCIK, Judge
  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK             FILED: July 7, 2017


Nikolaos Tsiakanikas (Applicant) appeals the order of the Philadelphia County Common Pleas Court (trial court) reversing the decision of the City of Philadelphia (City) Board of License and Inspection (L&I) Review (Board) that granted Applicant's application for an electrical contractor's license. We affirm.

On April 9, 2015, the L&I Construction Compliance Supervisor advised Applicant that the L&I Department (Department) did not approve his application for an electrical contractor license.[1] Applicant appealed the

---

[1] Section 9-1006 of the Philadelphia Code (Code) states, in relevant part:

> (1) *License Required.*
>
>   (a) No person shall engage in the business of installing systems, or parts of systems, used to transmit, generate or distribute

**(Footnote continued on next page…)**

Department's decision and continued working with the Department to obtain his license.

On July 20, 2015, Applicant submitted an application to the Department in which he described his electrical work experience as: employment with TNT Electrical Services (TNT) from 2002 to 2006, in a wiring position in which his duties included wiring kitchens, bathrooms, residential homes, and lighting layouts; and employment with Tony Rachuba (Rachuba) from 2006 to

---

**(continued…)**

electricity, nor engage in the business of electrical contracting, unless that person has obtained a license from the Department.

* * *

(2) *Requirements for License.* No Electrical Contractor's License shall be issued unless the following provisions have been satisfied:

(a) *Experience.* The applicant shall have a minimum of four years of practical experience gained while employed in electrical work. Satisfactory completion of two years of education in the electrical field shall be equivalent to one year of practical experience, but not more than four years of education shall count towards the required four years practical experience.

(b) *Examination.* The applicant shall have passed a written examination, as prescribed by the Department, on the theory and practice of electricity to test knowledge of the National Electrical Code (NFPA 70) as adopted by the Pennsylvania Uniform Commercial Code.

(c) *Continuing Education.* Before any Electrical Contractor's License is issued or renewed, the applicant . . . shall have completed at least eight hours per year in course work or seminars on the then-current edition of NFPA 70 at an approved or accredited school or organization approved by the Department.

2015, in a wiring position in which his duties included "wiring of residential jobs, additions, kitchens, bathrooms, [and] panel installs." Reproduced Record (R.R.) at 68a.

On August 25, 2015, the Board held a hearing on Applicant's appeal. The City noted that the Department had not yet acted on Applicant's new application, but that it would be denied because Applicant did not have the work experience required by Section 9-1006(2)(a) of the Code. Applicant maintained that he has the necessary experience to quality for an electrical contractor's license.

Applicant testified that he is a licensed general contractor and that he has owned his own business for approximately 10 or 11 years. R.R. at 118a. He explained that he worked for TNT from 2002 to 2006, and with Rachuba in the following years. In describing his working relationship with both of those electrical contractors, he stated that he "would get jobs for additions, kitchens, bathrooms, whole-house rewires" and that he "would hire [Rachuba] and [TNT] to work with me with the condition that I would supply all the materials, they would do the labor in agreement that I would work alongside them in order for me to learn." *Id.* at 118a-119a. Applicant estimated that he worked 30 to 40 jobs with TNT over the four-year period and that while he did not work alongside the apprentices "every single day," it was "most of the time" and that he was "doing the same thing with [Rachuba]." *Id.* at 120a, 122a.

Applicant introduced the following exhibits at the hearing: (1) a letter from TNT's president stating that Applicant had worked for the company as an electrician's helper in 2002, and as a junior mechanic in 2003, and that his work included wiring kitchens, bathrooms, and other residential improvements; (2) a letter from Rachuba stating that Applicant had been working for him for 10 years

and that all of the jobs that he did for Applicant were contingent on showing Applicant how to do what Rachuba was doing; (3) an April 10, 2014 report stating that Applicant had passed the Pennsylvania Standard Master Electrician examination; (4) a copy of Applicant's Lower Merion Township Electrical Contractor license; (5) a copy of Applicant's registration as a Registered Electrician in Cheltenham Township; (6) certifications from a number of professional electrician associations, including the International Association of Electrical Inspectors, evidencing Applicant's completion of continuing education units; and (7) a copy of Applicant's Upper Darby Township Master Electrician's license. R.R. at 74a-85a.

Rachuba testified that he was hired to do the electrical work on projects on which Applicant acted as a general contractor with the agreement that he would allow Applicant to work alongside him and he would instruct Applicant regarding the electrical work. R.R. at 126a-127a, 129a. He stated that he and Applicant "were never employees of one another" and that "[t]here was no W-2 required." *Id.* at 127a. He testified that Applicant "[a]bsolutely" "has had more than four years of practical experience just with [him]," and that his work with Applicant ended in January 2014. *Id.* at 128a.

Robert Parissi, an electrical inspector and the supervisor of the Department's Electrical Unit testified that he had reviewed the application and met with Applicant "quite a few times" during the application process. R.R. at 92a-93a. He acknowledged that the practical experience claimed by Applicant with TNT and Rachuba was "nine years total," and acknowledged that the exhibits admitted at the hearing were submitted with the application and reviewed by the Department. *Id.* at 94a, 108a. Parissi stated that, nevertheless, Applicant's

4

documentation was inadequate to support the issuance of a license because Applicant could not "support that with required W-2s" so Parissi would not "verify the fact that [Applicant] did, in fact, work for these people for the time he claimed he worked for them to learn his trade." *Id.* at 94a. Parissi testified that "everything else" that Applicant had in his application was "fine," but that the Department requires W-2s "of all our applicants" and "make[s] no exception to that rule." *Id.* at 98a. He could not identify where this requirement was codified, stating that it "comes from higher up above me. They're my directives." *Id.* at 101a.

At the conclusion of the hearing, the Board voted two to one to sustain Applicant's appeal. R.R. at 72a. In its written decision, the Board found Applicant's and Rachuba's testimony "credible, persuasive and largely uncontradicted by the City's witnesses or exhibits." Brief of Appellant, Exhibit B at 4. The Board concluded that "[b]ased upon the credible evidence of record," "Applicant satisfied [the] Code requirements for [the] issuance of an electrical contractor's license and that the City erred in denying his application." *Id.* The Board noted that Section 9-1006(2) of the Code requires "experience in electrical work, passing a written exam, and completion of continuing education credits" and that "[t]he City does not dispute that [A]pplicant passed the required exam and completed [the] necessary continuing education courses," but maintains "that the information submitted to establish necessary practical experience was inadequate in that it did not include W-2s for the relevant period." *Id.* at 4-5. The Board also noted that "[t]he City did not cite any Code language requiring [the] submission of W-2s" and that Parissi "could not identify any written directive establishing the requirement." *Id.* at 5. The Board concluded that "[g]iven the absence of any Code requirement or written Department directive mandating [the] submission of

5

W-2s, the Department's refusal to consider or evaluate other evidence of practical experience was . . . error." *Id.* The Board also "conclude[d] that the evidence of record is sufficient to establish that Applicant satisfied the requirements for [the] issuance of the requested electrical contractor's license, and that the Department erred in refusing his application." *Id.*

On September 22, 2015, the City appealed the Board's decision to the trial court and Applicant intervened in the appeal. Following argument, without taking additional evidence, the trial court issued the instant order reversing the Board's decision. In the opinion filed in support of its order, the trial court explained:

> While this Court readily accepts the Board's findings that Mr. Rachuba and [Applicant] presented credible testimony, their credibility cannot transform the instant situation – wherein a self-employed general contractor hires a sub-contractor to complete electrical work – into a situation of "practical experience gained while employed in electrical work," as required by [Section 9-1006(2)(a) of] the Code. The language of the Code clearly requires that the applicant gain the requisite practical experience **"while employed in electrical work"** which this Court has found to be while *working for another* in a master-servant relationship. This Court cannot read the language of the Code to include the situation wherein the person "employed in electrical work" is actually the person *hiring* an electrical sub-contractor to complete the electrical work, even if he may also be contributing to the completion of the electrical work.

Brief of Appellant, Exhibit A at 5 (emphasis in original and footnote omitted). Applicant then filed this appeal.[2]

---

[2] Our review of a local agency decision where the trial court does not receive additional evidence is limited to determining whether constitutional rights were violated, an error of law was committed, necessary findings of fact are supported by substantial evidence, or the **(Footnote continued on next page…)**

Applicant argues that the trial court erred in reversing the Board's decision because the Board's determination that he met the experience requirements of Section 9-1006(2)(a) of the Code is supported by substantial evidence. Specifically, Applicant claims that the term "employed" must be construed broadly to include his performance of electrical work for TNT and Rachuba so that the Board was presented with substantial competent evidence through his testimony and that of Rachuba that he was "employed in electrical work" in excess of the four-year requirement of Section 9-1006(2)(a).

However, we agree with the trial court that the Board erred in determining that Applicant met the four-year experience requirement of Section 9-1006(2)(a) of the Code. As noted above, Section 9-1006(2)(a) provides:

> *Experience.* The applicant shall have a minimum of four years of practical experience gained while employed in electrical work. Satisfactory completion of two years of education in the electrical field shall be equivalent to one year of practical experience, but not more than four years of education shall count towards the required four years practical experience.

Because the term "employed" is not defined in the Code, the rules of statutory construction apply. *City of Philadelphia v. City of Philadelphia Tax Review Board ex rel. Keystone Health Plan East, Inc.*, 132 A.3d 946, 952 (Pa. 2015). "'When statutory words or phrases are undefined by the statute, the Court construes the words according to their plain meaning and common usage.' A

---

**(continued…)**

procedures of the local agency are contrary to statute. Section 754(b) of the Local Agency Law, 2 Pa. C.S. §754(b); *Mulberry Market, Inc. v. Board of License & Inspection Review*, 735 A.2d 761, 763 (Pa. Cmwlth. 1999).

statute must be given its plain and obvious meaning." *Harmer v. Pennsylvania Board of Probation and Parole*, 83 A.3d 293, 299 (Pa. Cmwlth.), *appeal denied*, 97 A.3d 746 (Pa. 2014) (citations omitted).[3] "[I]t is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute." *Hoffman Mining Company, Inc. v. Zoning Hearing Board of Adams Township*, 32 A.3d 587, 592 (Pa. 2011) (citation omitted).[4] Moreover, because the Department is the entity charged with administering Section 9-1006 of the Code, its interpretation of its provisions is entitled to substantial deference and will only be overturned if it is clearly erroneous. *Schuylkill Township v. Pennsylvania Builders Association*, 7 A.3d 249, 253 (Pa. 2010).

Where, as here, the term "employed" is not defined in the Code, it is appropriate to look to the common law principles governing an employment relationship developed in other areas of the law to determine whether the "practical experience" that Applicant "gained" as required by Section 9-1006(2)(a) of the Code was the result of such a relationship. *See, e.g., Sweet v. Pennsylvania Labor*

---

[3] *See also* Section 1903(a) of the Statutory Construction Act, 1 Pa. C.S. §1903(a) ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]").

[4] *See also* Section 1921(a) of the Statutory Construction Act, 1 Pa. C.S. §1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all of its provisions."); *Commonwealth v. Fant*, 146 A.3d 1254, 1260-61 (Pa. 2016) ("We must read a section of a statute in conjunction with other sections, construing them always with reference to the entire statute. By the same token, we cannot arrive at the meaning of a word, even the 'ordinary' meaning, without considering the surrounding words and provisions. Indeed, 'a statute cannot be dissected into individual words, each one being thrown onto the anvil of dialectics to be hammered into a meaning which has no association with the words from which it has violently been separated.'") (citations omitted).

8

*Relations Board*, 322 A.2d 362, 365 (Pa. 1974) ("The more fundamental question of whether an employer-employe relationship exists is one of first impression with this Court in the context of labor relations. The tests developed in other areas of the law for ascertaining the existence of an employer-employe relationship, however, are equally probative of the issue as presented in the instant case."); *Department of Labor and Industry v. Pennsylvania Human Relations Commission*, 545 A.2d 412, 414 (Pa. Cmwlth. 1988) ("As this Court observed in *Harmony Volunteer Fire Company and Relief Association v. Pennsylvania Human Relations Commission*, [459 A.2d 439 (Pa. Cmwlth. 1983)], the [Pennsylvania Human Relations Act[5]] fails to define 'employment,' and so a court faced with the question of whether or not an employment relationship was contemplated by the parties must look to the common law principles governing master-servant relationships.").

As we explained in *Harmony Volunteer Fire Company and Relief Association*, 459 A.2d at 442:

> "'The relation of master and servant exists where the employer has the right to select the employee, the power to remove and discharge him, and the right to direct both what work shall be done, and the way and manner in which it shall be done.'" The employer's power to control the nature and the parameters of the employee's activities is the key to the relationship. Although the duty to pay a salary is often coincident with the status of employer, it is not an absolute prerequisite. [(Footnotes omitted).]

Thus, the payment of wages is not necessarily an element in demonstrating the existence of an employment relationship.

---

[5] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§951-953.

Nevertheless, the Board erred in determining that Applicant presented substantial evidence that he has "four years of practical experience gained while employed in electrical work" as required by Section 9-1006(2)(a). Section 9-1006(1)(a) of the Code requires electrical contractors to obtain a license before they "engage in the business of electrical contracting," and Section 9-1006(6)(e) prohibits an electrical contractor from "employ[ing] an unlicensed subcontractor to perform any activity regulated under this Section." Moreover, Section 9-1006(3) requires an electrical contractor to maintain workers' compensation insurance where applicable, comprehensive general liability insurance, products and completed operations insurance and motor vehicle liability insurance, and failure to maintain such insurance will result in the revocation or non-renewal of a license.

In light of the foregoing statutory scheme, it is clear that the requirement of "practical experience gained while employed in electrical work" should not be construed in the general sense as argued by Applicant, but should be construed as requiring electrical work experience in an employment relationship as determined by the trial court. *See, e.g., Bethlehem Area School District v. Carroll*, 616 A.2d 737, 744 n.5 (Pa. Cmwlth. 1992) (holding that use of the term "employed" in the phrase "employed in a district's program for special education" in Section 2509 of the Public School Code of 1949[6] listing those salaries that will be reimbursed by the Commonwealth for courses for exceptional children means "engaged for hire" rather than the broader sense of "used"). While no proof of the payment of wages was required to establish such a relationship, there was no evidence that either TNT or Rachuba had the right to select Applicant as an employee or to discharge him from employment. As a result, the trial court did not

---

[6] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §25-2509.

10

err in reversing the Board's determination that Applicant presented substantial evidence that he met the requirements of Section 9-1006(2)(a) of the Code.

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of City of Philadelphia  :
                                        :
From The Decision of the Board of       : No. 1085 C.D. 2016
License and Inspection Review           :
                                        :
Appeal of: Nikolaos Tsiakanikas         :

# **O R D E R**

AND NOW, this 7<u>th</u> day of <u>July</u>, 2017, the order of the Philadelphia County Court of Common Pleas dated May 18, 2016, at No. September Term, 2015, No. 02522, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge